STANLEY KING, Plaintiff-Appellant, v. ALLSTATE INSURANCE COMPANY, Defendant-Appellee.

First District (4th Division)   No. 1—93—4319

Opinion filed December 30, 1994.

Robert F. Lisco, of Chicago, for appellant.

Ross & Hardies, of Chicago (Peter J. Valeta and John C. Nishi, of counsel), for appellee.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Stanley King, appeals from an order granting summary judgment in favor of the defendant, Allstate Insurance Company, on his complaint for declaratory judgment. We consider whether it violates the public policy of Illinois to allow the defendant to set off the amounts the plaintiff received from the policies of an insured motorist and an underinsured motorist against the plaintiff's underinsured motorist coverage. For the following reasons, we reverse and remand.

The plaintiff was injured when he was involved in a two-car accident while riding his bicycle on June 30, 1992. He incurred medical bills over $48,000. Susan Episcopo, one of the drivers who was at fault in the accident, had car insurance with a limit for bodily injury liability of $100,000 per person and $300,000 per occurrence. Phyllis Rasmunson, the other driver who was at fault in the accident, had car insurance with a limit for bodily injury liability of $20,000 per person and $40,000 per occurrence. The plaintiff received the limits of both drivers' policies, which was $120,000.

At the time of the accident, the plaintiff had a car insurance policy with the defendant which provided underinsured motorist coverage of $50,000 per person and $100,000 per occurrence. The plaintiff's policy required the defendant to pay "damages for bodily injury or property damage which a person insured is legally entitled to recover from the owner or operator of an uninsured auto." An "uninsured auto" was defined, in part, under the policy as:

> "An underinsured motor vehicle which has liability protection in effect and applicable at the time of the accident in an amount equal to or greater than the amounts specified for bodily injury or property damage liability by the financial responsibility laws of Illinois, but less than the limit of liability for [underinsured motorist coverage] shown in the declarations page."

The underinsured motorist coverage of the plaintiff's policy also provided:

> "Damages payable will be reduced by:
> (a) all amounts paid by or on behalf of the owner or operator of the uninsured auto *or anyone else responsible*. This includes all sums paid under the bodily injury liability coverage of this or any other auto policy.
> ***
> In addition, the limits for [underinsured motorist coverage] will be reduced by all amounts paid by or on behalf of the owner or operator of the underinsured motor vehicle." (Emphasis added.)

The defendant denied the plaintiff's claim for the limit of his underinsured motorist coverage.

The plaintiff then filed a declaratory judgment action against the defendant alleging that although he received the limits of the drivers' policies, he received an amount less than what would compensate him for his injuries. He requested the court to declare that the defendant was required to pay him the full amount of his underinsured motorist coverage, which was $50,000, without a setoff of the amounts he received from the other policies.

The defendant answered the complaint and admitted that the amount the plaintiff recovered from the drivers' insurance policies did not fully compensate him. The defendant also filed a counterclaim for declaratory judgment alleging that under the plaintiff's policy, his underinsured motorist coverage of $50,000 was subject to setoffs of $20,000 for the payment from Rasmunson's policy, who was the underinsured motorist, and $100,000 for the payment from Episcopo's policy.

Both parties moved for summary judgment on their complaints agreeing that there was no disputed question of material fact and that the only question to be decided was one of law, the interpreta-

tion of the policy. After a hearing, the trial judge granted the defendant's motion for summary judgment and the plaintiff now appeals.

OPINION

Summary judgment should be granted when the pleadings, depositions, admissions on file, and any affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. (735 ILCS 5/2—1005(c) (West 1992).) The interpretation of an unambiguous insurance policy and the effect of relevant statutory provisions are questions of law which are appropriate to decide on a motion for summary judgment. (*Banes v. Western States Insurance Co.* (1993), 247 Ill. App. 3d 480, 616 N.E.2d 1021.) An insurance policy should be enforced as written if it is not ambiguous and only to the extent it does not violate public policy. (*Gibbs v. Madison Mutual Insurance Co.* (1993), 242 Ill. App. 3d 147, 610 N.E.2d 143.) The review of a summary judgment is *de novo. In re Estate of Hoover* (1993), 155 Ill. 2d 402, 615 N.E.2d 736.

The plaintiff contends that under the public policy of this State, as announced in *Hoglund v. State Farm Mutual Automobile Insurance Co.* (1992), 148 Ill. 2d 272, 592 N.E.2d 1031, the defendant can only set off the amounts received from other insurance policies against his underinsured motorist coverage to the extent necessary to prevent double recovery. Because the plaintiff has not been fully compensated for his injuries, he argues he will not receive a double recovery if he receives the limit of his underinsured motorist coverage. The defendant responds that *Hoglund* only applies to uninsured motorist coverage and that other courts have declined to apply *Hoglund* to underinsured motorist cases.

In *Hoglund*, the supreme court decided consolidated cases involving similar facts. In each case, the plaintiff was injured while she was a passenger in an uninsured motor vehicle which collided with an insured motor vehicle. Both drivers in each case were at fault. The plaintiffs received the policy limits of $100,000 on the insured drivers' policies, but suffered damages in excess of that amount. As a result, they sought to obtain the uninsured coverage of $100,000 in their own policies. The defendant insurance company denied the claims after setting off the amounts the plaintiffs received from the insured drivers against their uninsured motorist coverage.

The supreme court in *Hoglund* began its discussion by stating that the purpose of uninsured motorist coverage, which is required by statute, is to put the insured "in substantially the same position as if the wrongful uninsured driver had been minimally insured."

(*Hoglund*, 148 Ill. 2d at 277, 592 N.E.2d at 1034.) The policies involved allowed the insurance company to reduce payments under their uninsured motorist coverage by any amount the insured received from any other party. Although the literal language of the policies allowed the setoff, the court did not consider that in isolation. It also considered the insureds had a reasonable expectation of coverage because they paid premiums for uninsured motorist coverage, the public policy behind uninsured motorist coverage, the coverage intended under the policy, and the facts of the case. In this light, the court found a latent ambiguity in the policies as applied to the plaintiffs which had to be resolved in favor of coverage. The insurance company was claiming a setoff for the amount paid by an insured driver for that driver's fault which was unrelated to the fault of the uninsured driver. Allowing the insurance company to set off the amount received from an insured driver against the plaintiffs' uninsured motorist coverage effectively nullified the coverage for uninsured motorists. Such a result violated the public policy behind uninsured motorist coverage. The court found that the insurance company was entitled to a setoff against the uninsured motorist coverage only to the extent necessary to prevent double recovery.

The defendant in this case asserts that *Hoglund* does not apply because the policy considerations behind uninsured motorist coverage and underinsured motorist coverage are different, relying in part on *Sulser v. Country Mutual Insurance Co.* (1992), 147 Ill. 2d 548, 591 N.E.2d 427. In *Sulser,* the supreme court considered whether workers' compensation benefits could be set off against underinsured motorist coverage. The court had previously decided that such benefits could be set off against uninsured motorist coverage. In discussing the issue, the court stated:

> "[T]he intent of the legislature in providing uninsured motorist coverage was to place the insured in substantially the same position he would occupy if the tortfeasor were minimally insured. [Citation.] This court has long held that sections of the same statute should be considered to be *in para materia*, and that each section should be construed with every other part or section so as to produce a harmonious whole. [Citations.] Thus we conclude that the legislature enacted its provision for underinsured motorist coverage with the same underlying purpose for which it enacted [its provision for uninsured motorist coverage], *i.e.,* to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance.
>
> [(The court referred to the legislative debates on the bill for underinsured motorist coverage where a legislator stated it was

designed to 'fill the gap.')] \*\*\* A provision designed to offer insurance to 'fill the gap' between the claim and the tortfeasor's insurance was obviously not intended to allow the insured to recover amounts from the insurer over and above the coverage provided by the underinsured motorist policy." (*Sulser*, 147 Ill. 2d at 555-56, 591 N.E.2d at 429-30.)

The court stated that in enacting both sections the legislature intended to place the insured in the same position he would have been in if he was injured by a motorist who carried liability insurance in the same amount as the policy holder. Therefore, the court found that workers' compensation benefits could also be deducted from underinsured motorist coverage.

Several cases which the parties rely on and discuss are factually distinguishable from the present case because although they involved underinsured motorist coverage, there was only one at-fault driver. See *Banes*, 247 Ill. App. 3d 480, 616 N.E.2d 1021 (finding *Hoglund* applied to underinsured cases but did not apply to cases with one at-fault driver); *Marroquin v. Auto-Owners Insurance Co.* (1993), 245 Ill. App. 3d 406, 614 N.E.2d 528 (distinguishing *Hoglund*); *Obenland v. Economy Fire & Casualty Co.* (1992), 234 Ill. App. 3d 99, 599 N.E.2d 999 (distinguishing *Hoglund*).

Although *Sulser* is not directly applicable to the present case because it involved the setoff of workers' compensation benefits, its discussion of underinsured motorist coverage is instructive. It establishes that, contrary to the defendant's position, the public policy considerations behind both uninsured motorist coverage and underinsured motorist coverage are similar rather than distinct. As a result, the rationale of *Hoglund* applies to the present case. See *Gibbs*, 242 Ill. App. 3d 147, 610 N.E.2d 143 (applying *Hoglund* to a case involving underinsured motorist coverage where there were two at-fault drivers).

As in *Hoglund*, the policy language in this case would allow the defendant to set off any amounts the insured received from other responsible parties. However, as applied in this case, to allow the total $120,000 setoff claimed by the defendant would effectively negate the plaintiff's $50,000 underinsured motorist coverage. Relying on the analogous holding in *Hoglund*, this would violate the public policy behind underinsured motorist coverage.

The plaintiff here contends that Episcopo was an underinsured motorist because her policy limits were $20,000 per person. Actually, as alleged in the defendant's declaratory judgment action and admitted by the plaintiff, Episcopo's policy was $100,000 per person and Rasmunson's policy was $20,000 per person. Under section 143a—

2(4) of the Illinois Insurance Code (215 ILCS 5/143a—2(4) (West 1992)), Rasmunson was the underinsured driver because her policy limits were less than the plaintiff's policy limits of $50,000 per person. The defendant here has admitted in its answer to the plaintiff's declaratory judgment complaint that the plaintiff's recovery of $120,000 from both drivers' policies did not fully compensate him for his injuries. Beyond that, the extent of the plaintiff's damages is not apparent from the record although the plaintiff argued in his motion for summary judgment that his damages exceeded $250,000.

Under *Hoglund*, the defendant can only set off the amounts received from other policies to the extent necessary to prevent double recovery. Under *Sulser*, an insured may not recover more than the amount he carried for underinsured motorist coverage as a result of an accident with an underinsured motorist. In *dicta*, the court in *Banes* discussed *Hoglund* and stated: "It is only when the plaintiff's damages exceed both tort-feasors' policy limits and his or her own uninsured or underinsured motorist coverage limits that the plaintiff is entitled to recover the full amount from all policies." (*Banes*, 247 Ill. App. 3d at 483, 616 N.E.2d at 1024.) This statement is not entirely accurate because, as evidenced in this case, section 143a—2(4) limits an insurer's liability to the amount of underinsured motorist coverage "less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle." (215 ILCS 5/143a—2(4) (West 1992).) Therefore, the plaintiff in this case could not recover the full amount from his underinsured motorist coverage because he received a payment from the underinsured motorist's policy.

Here, the plaintiff had a $50,000 limit per person for underinsured motorist coverage and received $20,000 from the underinsured motorist. As a result, the maximum the plaintiff can recover from the defendant under his underinsured motorist coverage is $30,000. As the plaintiff is precluded from obtaining a double recovery under *Hoglund*, whether he can recover the full $30,000 from the defendant depends on the total extent of his damages. Because the extent of the plaintiff's damages over $120,000 is unknown, this case is remanded for a determination of the plaintiff's damages over that amount and for further proceedings consistent with this opinion.

Reversed and remanded.

CAHILL and THEIS, JJ., concur.